UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

FRANK S. CAMMARATA,                    1:16-cv-00322-NLH-AMD
as successor to MHP II
Corporation,                           **OPINION**
doing business as
CAMMARATA ASSOCIATES,

                Plaintiff,

        v.

KELLY CAPITAL LLC and MICHAEL
R. KELLY,

                Defendants.

_____

**APPEARANCES**:

THOMAS J. BURNS, III
LINDSEY HOUSMAN
BUDD LARNER
150 JOHN F. KENNEDY PARKWAY
SHORT HILLS, NJ 07078
     On behalf of plaintiff

JONATHAN DAVID HENRY
SHAWN LUNNEY KELLY
DENTONS US LLP
101 JFK PARKWAY
SHORT HILLS, NJ 07078-2708
     On behalf of defendants

**HILLMAN**, District Judge

     This case involves the claims of plaintiff, Frank S.

Cammarata, who does business as a sole proprietor under the name

Cammarata Associates, against defendants, Kelly Capital LLC and

Michael Kelly.  Plaintiff alleges that defendants failed to pay

him a commission for his role in connecting defendants with a Virginia-based tobacco company that sold escrow release funds. Defendants have moved to dismiss plaintiff's claims for lack of personal jurisdiction and for his failure to state any viable claims.  Plaintiff has cross-moved to file a third amended complaint.  For the reasons expressed below, defendants' motion to dismiss plaintiff's claims for lack of personal jurisdiction will be granted, and plaintiff's motion for leave to amend his complaint will be denied as moot.

## BACKGROUND

The following allegations are set forth in plaintiff's complaint.[1]  In 2010, Kelly Capital was exploring escrow fund asset purchase opportunities in the tobacco industry.  Kelly Capital was aware that Frank Cammarata, sole shareholder of MHP II, had substantial contacts in the tobacco industry and a working knowledge of asset purchase transactions with tobacco companies.  Kelly Capital sought Cammarata's assistance in

---

[1] Defendants have moved to dismiss plaintiff's current complaint, and in response, plaintiff has moved for leave to file a third amended complaint.  Because the standard for assessing the viability of a complaint is the same as the standard for determining whether an amended complaint should be permitted, Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d Cir. 1988) (amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss), the Court will set forth the claims from the proposed third amended complaint. (Docket No. 14-2.)

seeking and closing those types of transactions,[2] particularly

with S&M Brands ("S&M"), which had escrow release funds ("escrow

releases") from the years 1999-2009 in the amount of

$182,491,650 available for purchase.[3]

---

[2] As discussed below, defendants contest that they contacted
plaintiff and instead contend that plaintiff reached out to
them.

[3] The Eastern District of Virginia explained the concept of
escrow fund assets, or escrow release funds, in a case that
resulted from Cammarata connecting Kelly Capital with S&M:

> S & M has been a tobacco manufacturer and distributor of
> cigarettes and other tobacco products since 1994.  It is a
> privately owned, family run corporation, with its principal
> place of business in Keysville, Virginia, but it sells
> tobacco products throughout the Eastern United States.
> In the 1990's, several states initiated class actions
> against tobacco manufacturers seeking compensation for
> expenses incurred, or to be incurred, in treating diseases
> associated with smoking tobacco. Those actions were settled
> pursuant to a 1998 Master Settlement Agreement ("MSA").
> However, not all tobacco companies were parties to the
> class actions or the MSA; and, to bring the non-signing
> manufacturers into the fold and achieve the same result as
> the MSA, states passed legislation.
>
> As a result of the MSA or the state legislation, tobacco
> manufacturers in Virginia and 45 other states are required
> either to have signed the MSA or to contribute annually to
> an escrow account certain sums for each carton of
> cigarettes sold.  The deposited funds must remain in escrow
> for 25 years.  While in escrow, those funds may be used
> only to pay judgments on, or settlements of, tobacco-
> related claims. At the end of 25 years, the depositing
> company is entitled to the deposited funds then remaining
> in the escrow account, *i.e.,* the portion of the principal
> that has not been used to pay judgments on, or settlements
> of, tobacco-related claims.  The deposited funds may be
> invested, under tightly regulated circumstances, in very
> restricted investment vehicles that produce interest
> income.  In essence, the deposited funds earn interest and

In response to that request, Cammarata formed MHP II for the sole purpose of assisting Kelly Capital with its tobacco escrow-releases purchase efforts.  On April 12, 2010, Kelly Capital and MHP II entered into a Commission Agreement. Pursuant to the Agreement, MHP II was to receive a commission of five percent (5%) of the gross purchase price paid by Kelly Capital to S&M for the subject escrow releases.  The commission was payable at the time of the closing of each prospective transaction.

---

the depositing company is entitled to that interest, as it is earned.

S & M did not sign the MSA, and thus, as required by state laws, it has established escrow accounts in each state in which it sells cigarettes.  The escrow accounts are governed by an Escrow Agreement between S & M and a national banking association.  S & M has a separate escrow account for each year in which it has sold cigarettes and thereafter funded the escrow accounts.

The tobacco companies that establish, and fund, these escrow accounts cannot sell, transfer, distribute, or use the principal funds deposited in the accounts until expiration of the 25-year period.  However, they can sell or distribute what are called "escrow releases."  An escrow release, *inter alia,* vests in the purchasing entity: (1) the right to the interest income earned from the funds that have been deposited into the escrow accounts; and (2) the right to receive any funds, principal or interest, that remain in the escrow account at the end of the 25-year period.

Kelly Capital, LLC v. S & M Brands, Inc., 873 F. Supp. 2d 659, 662-63 (E.D. Va. 2012), amended (Aug. 14, 2012), as corrected (Oct. 10, 2012), aff'd, 532 F. App'x 422 (4th Cir. 2013) (internal citations omitted).

4

In July 2010, the parties amended their agreement.  The amendment acknowledged that Kelly Capital had assigned its interest in an Escrow Release Transfer Agreement ("ERTA") with S&M to a "related entity" – Kelly Escrow Fund V, a limited liability company of which Kelly Capital is the sole member. The amendment to the Commission Agreement further clarified, and expressly stated, that Kelly Capital remained contractually obligated to pay MHP II its commission pursuant to the terms of the original Commission Agreement; and that the commission was payable at the time the purchased asset was transferred to the accounts of the related, third-party entity, or its financial institution, rather than payable at the time of closing the purchase of the escrow releases from S&M.

Kelly Capital or its related entities made two purchases of escrow funds from S&M.  On April 16, 2010, Kelly Capital or its related entities purchased $30 million of S&M escrow releases for a purchase price of $10 million.  Kelly Capital owed MHP II a commission of $500,000 for that transaction.  Kelly Capital paid that commission to Cammarata.

On July 15, 2010, Kelly Capital/Kelly Escrow purchased an additional $40 million of S&M escrow releases for a purchase price of $13.6 million.  Pursuant to the amended Commission Agreement, Kelly Capital owed MHP II a commission of $670,000 for the July 2010 transaction.  The disposition of the July 2010

escrow releases purchased by Kelly Capital/Kelly Escrow was delayed, however, by a lawsuit initiated by Kelly Capital against S&M regarding tax-liability issues that arose between Kelly Capital and its related entities and S&M.  That matter was litigated in the Eastern District of Virginia.[4]

Prior to initiating its lawsuit against S&M, Kelly Capital asked MHP II to amend the Commission Agreement for the express purpose of altering the time at which MHP II's Commission became payable.  More specifically, in July 2010 Kelly Capital, through a telephone call from Michael Kelly to Cammarata, informed MHP II that it had to "warehouse" the $40 million in escrow releases it had just purchased from S&M, and asked MHP II to agree to wait for payment of its commission until it could free up the escrow releases for disposition.  Kelly represented that the process would take 60 to 90 days.

In reliance on that representation from Kelly, Cammarata and MHP II granted Kelly Capital's request by executing the amendment prepared by Kelly Capital.  At the time he made that representation to Cammarata, Michael Kelly knew that it was false because Kelly Capital intended to, and did, file a lawsuit against S&M in October 2010, which he knew would result in a significant delay in the disposition of the subject escrow

---

[4] See, *supra*, note 3.

releases.

By October 2014, the lawsuit was decided by a trial court, affirmed on appeal, and resulted in the subject escrow releases being available for disposition.  In the interim, MHP II assigned all of its rights and interests in commissions due and owing from Kelly Capital to Cammarata Associates.

On December 8, 2014, Cammarata Associates issued a demand letter to Michael Kelly and Kelly Capital for the commission payment due and owing on the July 2010 transaction.  Cammarata Associates sent follow up demands for payment to Michael Kelly and Kelly Capital on January 8, 2015 and February 10, 2015.  To date, Kelly and Kelly Capital have not responded to those demand letters, and Kelly Capital has not paid the commission due and owing for the July 2010 purchase of escrow-releases from S&M.

Based on these allegations, plaintiff has lodged six counts against defendants for breach of contract, fraudulent inducement, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, quantum meruit, and unjust enrichment.[5]

Defendants have moved to dismiss plaintiff's claims on two bases.  First, defendants argue that this Court cannot exercise

---

[5] Plaintiff's proposed third amended complaint has removed a count for conversion, and has added counts for breach of the implied covenant of good faith and fair dealing, quantum meruit, and unjust enrichment.

personal jurisdiction over them.  Second, in the event that the Court determines that personal jurisdiction exists, defendants argue that all of plaintiff's claims fail as a matter of law.

## DISCUSSION

### A. Subject Matter Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  Plaintiff Frank S. Cammarata, the sole proprietor of Cammarata Associates, is a citizen of New Jersey.  The sole member of defendant Kelly Capital LLC is the Michael R. Kelly Trust, whose beneficial owner, defendant Michael Kelly, is a citizen of the State of California.

### B. Standard for Motion to Dismiss pursuant to Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant.  "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001)).  In deciding a motion to dismiss for lack of personal jurisdiction, the Court must "accept all of the

plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir.), cert. denied, 506 U.S. 817 (1992) (citations omitted).[6]

A defendant is subject to the jurisdiction of a United States district court if the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]" Fed. R. Civ. P. 4(k)(1)(A). "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004)(citations omitted). The New Jersey long-arm statute "permits the exercise of personal jurisdiction to the fullest limits of due process." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (citing DeJames v.

---

[6] There is a "significant procedural distinction" between a motion pursuant to Rule 12(b)(2) and a motion pursuant to Rule 12(b)(6). Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984). "A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." Id. (citation omitted).

Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981)).

Under the Due Process clause, the exercise of personal jurisdiction over a non-resident defendant is appropriate when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

A defendant establishes minimum contacts by "'purposefully avail[ing] itself of the privilege of conducting activities within the forum State,'" thereby invoking "'the benefits and protections of [the forum State's] laws.'" Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of California, 480 U.S. 102, 109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). This "purposeful availment" requirement assures that the defendant could reasonably anticipate being haled into court in the forum and is not haled into a forum as a result of "random," "fortuitous" or "attenuated" contacts with the forum state. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Burger King Corp., 471 U.S. at 472, 475 (internal citations omitted).

In deciding whether a defendant's contacts with a forum are sufficient to confer personal jurisdiction over that party, the Court must consider whether such contacts are related to or

arise out of the cause of action at issue in the case.  The
Court may exercise specific personal jurisdiction over a
defendant where the cause of action is related to or arises out
of activities by the defendant that took place within the forum
state.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466
U.S. 408, 414 n.8 (1984).  If the cause of action has no
relationship to a defendant's contacts with a forum state, the
Court may nonetheless exercise general personal jurisdiction if
the defendant has conducted "continuous and systematic" business
activities in the forum state.  Id. at 416.

        Once the Court determines that the defendant has minimum
contacts with the forum state, it must also consider whether the
assertion of personal jurisdiction over the defendant
"comport[s] with 'fair play and substantial justice'" to satisfy
the due process test.  Burger King Corp., 471 U.S. at 476
(quoting Int'l Shoe, 326 U.S. at 320).  In this regard, it must
be reasonable to require the defendant to litigate the suit in
the forum state, and a court may consider the following factors
to determine reasonableness: the burden on the defendant, the
forum state's interest in adjudicating the dispute, the
plaintiff's interest in obtaining convenient and effective
relief, the interstate judicial system's interest in obtaining
an efficient resolution of controversies, and the shared
interest of the several States in furthering fundamental

substantive social policies.  Id. at 477 (citing World Wide
Volkswagen, 444 U.S. at 292).

C.    **Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted
pursuant to Federal Rule of Civil Procedure 12(b)(6), a court
must accept all well-pleaded allegations in the complaint as
true and view them in the light most favorable to the plaintiff.
Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well
settled that a pleading is sufficient if it contains "a short
and plain statement of the claim showing that the pleader is
entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the
liberal federal pleading rules, it is not necessary to plead
evidence, and it is not necessary to plead all the facts that
serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562
F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal
Rules of Civil Procedure do not require a claimant to set forth
an intricately detailed description of the asserted basis for
relief, they do require that the pleadings give defendant fair
notice of what the plaintiff's claim is and the grounds upon
which it rests."  Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S.
147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks
"'not whether a plaintiff will ultimately prevail but whether

the claimant is entitled to offer evidence to support the

claim.'" <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 563 n.8 (2007)

(quoting <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974)); <u>see also</u>

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 684 (2009) ("Our decision in

<u>Twombly</u> expounded the pleading standard for 'all civil actions'

. . . ."); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir.

2009) ("<u>Iqbal</u> . . . provides the final nail-in-the-coffin for

the 'no set of facts' standard that applied to federal

complaints before <u>Twombly</u>.").

    **D.**   **Analysis**

Defendants argue that plaintiff cannot demonstrate that

they purposefully availed themselves of this forum sufficient to

allow the exercise of personal jurisdiction.  According to

defendants, their contacts with New Jersey, as set forth by

plaintiff's complaint, involve: (1) one phone call between

plaintiff and Kelly, (2) one email from defendants' in-house

counsel to plaintiff, (3) two agreements in 2010 sent via email,

and (4) payment of one commission to plaintiff.

Defendants argue that S&M hired plaintiff as its broker,

plaintiff reached out to them in California – not the other way

around - and he then connected them with S&M, a Virginia

company, on a conference call.  Defendants never traveled to New

Jersey, or were physically present in New Jersey at any time,

and they claim that they were not aware that plaintiff was a New

Jersey resident.  Defendants point out that the agreements did not contemplate that plaintiff would act on defendants' behalf from New Jersey, or even at all, and that plaintiff's involvement with defendants and S&M was limited to providing introductory services concerning the S&M transaction. Defendants further argue that the ultimate focus of the agreements was to do business with a Virginia company that owned Virginia tobacco escrow releases pursuant to Virginia law, and they had not contemplated that they could be haled into New Jersey court for claims arising out of these agreements.[7]

In response to defendants' arguments, plaintiff has provided a certification to support his contention that this Court can exercise personal jurisdiction over defendants.[8] Plaintiff's certification states: (1) Kelly contacted plaintiff about Kelly Capital's interest in purchasing tobacco escrow funds based on information he received from his brother, John Kelly, who was plaintiff's business associate, (2) Kelly and

---

[7] Defendants also argue that there is no basis to exercise jurisdiction over Kelly individually, as all of Kelly's actions were undertaken in his capacity as the principal of Kelly Capital, and not in his own individual capacity.  Defendants also argue that plaintiff cannot establish general jurisdiction over them.  Plaintiff does not appear to dispute these points.

[8] The Court may consider a party's affidavit in deciding a Rule 12(b)(2) motion.  Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).

Kelly Capital contacted plaintiff in New Jersey on numerous occasions by telephone and electronic mail regarding the proposed Broker Agreement, (3) Kelly Capital prepared the Commission Agreement and sent it to plaintiff for review, revision and signature in New Jersey, (4) the substantial majority of work plaintiff performed in relation to the broker services MHP II provided to Kelly Capital took place in New Jersey, (5) when Kelly Capital paid MHP II its commission for the first set of escrow funds it purchased from S&M, it sent that payment to New Jersey, (6) when Kelly Capital wanted MHP II to amend the Commission Agreement, Kelly Capital and Kelly contacted plaintiff by electronic mail and by telephone in New Jersey, and (7) Kelly Capital prepared the Amendment to the Commission Agreement and sent it to plaintiff in New Jersey. (Docket No. 13-1.)

In addition to his certification, plaintiff argues that exercising jurisdiction over the defendants in this matter would not violate notions of fair play and substantial justice. Plaintiff is a New Jersey businessman and New Jersey citizen who formed a New Jersey business entity that contracted with Kelly Capital and performed the work that is the subject of this action in New Jersey.  Plaintiff argues that he should not be compelled to chase the defendants across the country to obtain relief for damages he suffered in New Jersey.  Plaintiff further

argues that the interest in the most efficient resolution of
this controversy outweighs the minimal "burden" to the
defendants in defending this action in New Jersey, since
defendants have New Jersey counsel, can conduct written
discovery while in California, and can participate in other
discovery and litigation tasks through the use of technology
that will control costs and expenses that pertain to the
distance between California and New Jersey.  Finally, plaintiff
argues the fundamental substantive social policy supporting the
exercise of personal jurisdiction is clear: if a business entity
wants to contract with a New Jersey entity to perform services
on its behalf in New Jersey, and subsequently attempts to avoid
paying that New Jersey business for its services, it should be
fully prepared to be haled into Court in New Jersey to account
for its actions.

In response to plaintiff's certification and arguments in
opposition to their motion, defendants argue that plaintiff's
representation that Kelly reached out to plaintiff is
contradicted by his deposition testimony in the Virginia
litigation, where he testified that John Kelly, a citizen of
California, told plaintiff to send an informational package to
his brother Michael Kelly in California, which plaintiff did.
This version of who contacted whom is also supported by a
certification of Michael Kelly.  (Docket No. 18.)

16

Kelly also disputes plaintiff's statement that the parties conducted "numerous" phone calls and emails, and challenges why plaintiff has not produced records of those calls and emails to support that contention.  Kelly further contends that he did not have any awareness of plaintiff's residency, as plaintiff simply served as the Virginia-based tobacco company's broker to connect it with an escrow fund release buyer.  Moreover, Kelly disputes plaintiff's description of his work being performed in New Jersey, since plaintiff did not work for defendants, and instead merely obtained a finder's fee for connecting the two companies.

Finally, defendants argue that requiring them to defend against plaintiff's claims in this forum would violate fair play and substantial justice because California defendants should not be forced to litigate in New Jersey over Virginia escrow releases when the New Jersey plaintiff reached out to California.  Defendants also argue that if plaintiff's position is adopted, it would allow plaintiff to create jurisdiction through the happenstance of his residence.

The Court agrees with defendants.  As a primary matter, the "fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident." Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). Instead, a court must look to the terms of the agreement, the

17

place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties. Id.

First, with regard to the terms of the agreement between plaintiff and defendants, the two agreements do not mention or implicate any particular state. (Docket No. 1-2 and 1-3.)  In the agreements, Kelly Capital is listed as a California limited liability company, but plaintiff is simply listed as "MHP II Corporation" without any reference to its location.  (Id.)

Moreover, the main agreement document makes clear that plaintiff served as "an independent contractor to [Kelly Capital] in order to provide introductory services concerning the S&M Transaction and the Escrow Funds," and that "MHP shall not engage in any negotiations whatsoever on behalf of [Kelly Capital]."  (Docket No. 1-2 at 2.)  The agreement further elaborated on plaintiff's very limited role in defendants' business relationship with S&M:

> MHP shall merely provide [Kelly Capital] with a contact person with S&M and introduce Company to S&M as a viable purchaser for the escrow releases related to the Escrow Funds.  MHP shall not in any way present any offer to acquire the escrow releases related to the Escrow Funds and/or in negotiate any of the terms of any such acquisition.  MHP shall not, however, have authority to bind Company to any contract or agreement.  MHP shall not be responsible for performing any due diligence or other investigation of any Escrow Fund, or for providing professional advice with respect to any legal, tax, engineering, construction or hazardous materials issues.  Company and MHP agree that their relationship is at arm's

18

length and is neither confidential nor fiduciary in nature.
MHP is not acting as and will not act as an employee at any
time.  MHP is not and will not be entitled to any benefits
that the Company may offer its employees.  MHP is solely an
independent contractor and such status can only changed by
a written agreement between the parties, which is signed by
both parties.

(Docket No. 1-2 at 2-3.)

The only state mentioned by implication in this agreement

is Virginia, as plaintiff's lone obligation to defendants was to

"merely provide" them with a contact person at S&M, which is

located in Virginia.  Neither the parties' connection to New

Jersey, nor the interests of New Jersey, are implicated or even

remotely contemplated by the terms of this agreement.[9]

Next, as to the place and character of the parties'

negotiations, future consequences, and the course of dealings,

even if the Court accepts that defendants first initiated

contact with plaintiff,[10] plaintiff's own description of the

---

[9] California is similarly not implicated by this agreement, other
than the description of Kelly Capital being a California limited
liability company.  Defendants are not arguing, however, that
personal jurisdiction does not exist over them if plaintiff
filed suit against them in California.

[10] The evidence more strongly suggests the opposite conclusion,
but in deciding a motion to dismiss for lack of jurisdiction, a
court is required to accept the plaintiff's allegations as true,
and is to construe disputed facts in favor of the plaintiff.
Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir.
2003).  It is important to note, however, that who initiated the
relationship is not significant "[i]n the commercial milieu";
rather "the intention to establish a common venture extending
over a substantial period of time is a more important
consideration."  General Electric Co. v. Deutz AG, 270 F.3d 144,

19

purpose of that contact weighs against personal jurisdiction over defendants in New Jersey.  Plaintiff avers that defendants were "exploring escrow fund asset purchase opportunities in the tobacco industry," they knew that he "had substantial contacts in the tobacco industry and a working knowledge of asset purchase transactions with tobacco companies," and that defendants wanted plaintiff's assistance with connecting them specifically with S&M in Virginia.  It is clear that regardless of the domicile of plaintiff, or even defendants, a transaction directly tied to Virginia was intended by the parties. Plaintiff could have been located anywhere in the country – or world for that matter - to facilitate the connection between defendants and S&M, as there is no evidence that any physical presence of the parties was required to broker the connection between defendants and S&M or the agreement regarding

---

150 (3d Cir. 2001).  We also note that while will accept Plaintiffs' version of the facts as it relates to this issue, in general a self-serving affidavit without any other supporting proof may not support a plaintiff's burden of establishing personal jurisdiction over a defendant. See Arrington v. Colortyme, Inc., 972 F. Supp. 2d 733, 742 (W.D. Pa. 2013) ("[T]he Court finds that this quantum of evidence--a short self-serving affidavit with no supporting documentation--cannot itself sustain a factual attack on the Court's subject-matter jurisdiction.") (citing Washington v. Hovensa LLC, 652 F.3d 340, 346-47 (3d Cir. 2011); De Cavalcante v. C.I.R., 620 F.2d 23, 26-27 (3d Cir. 1980) (when charged with making evidentiary determinations, court may find that self-serving affidavits absent evidentiary support are insufficiently probative)).

plaintiff's commission.

Tellingly, the Third Circuit judged the following scenario

to be a "close case":

> Defendants were limited partners in Virginia partnerships
> developing real estate in Virginia who applied to Mellon
> Bank, a Pennsylvania based lender, for loans that they
> personally guaranteed.  After the partnership defaulted,
> Mellon Bank filed suit on the guarantees.  We examined the
> defendants' contacts for purposeful availment in
> Pennsylvania, concluding that jurisdiction was proper
> because the defendants had reach[ed] out beyond one state
> and create[d] continuing relationships and obligations with
> citizens of another state.  We found particularly
> compelling the fact that defendants had "purposely
> directed" their activities into Pennsylvania: they
> approached Mellon Bank; they chose to finance with Mellon
> Bank when they could have financed elsewhere; they provided
> Mellon Bank in Pennsylvania with sufficient documentation
> so that they would obtain the loans; they sent updated
> financial information to Mellon Bank; and they knew that
> payments were to be mailed to Mellon Bank in Pennsylvania.

Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros., 983 F.2d 551,

557 (3d Cir. 1993) (discussing Mellon Bank (East) PSFS, Nat'l

Ass'n v. Farino, 960 F.2d 1217 (3d Cir. 1992)) (internal

quotation and citations omitted).  Even though "a court is

required to make an independent factual assessment of a

defendant's contacts with the forum when deciding whether it

possesses jurisdiction over that defendant," and "citing cases

where other courts found other defendants in similar

circumstances to be subject to that court's jurisdiction may or

may not be helpful," Farino, 960 F.2d at 1224-25, if the set of

facts in Farino was held to be a "close case," then the

situation in this case is far from close.

Courts have repeatedly held that "'informational communications in furtherance of [a contract between a resident and a nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant].'"  Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 152 (3d Cir. 1996) (quoting Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 32 (3d Cir. 1993) (citing Stuart v. Spademan, 772 F.2d 1185, 1193 (5th Cir. 1985) (stating that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws")).  In this case, defendants' connection to New Jersey by way of their finder's fee commission agreements with plaintiff was fortuitous and random, not based out of the business goal of buying a Virginia tobacco company's escrow releases, but because plaintiff just so happened to live in New Jersey.

That defendants contracted with a New Jersey company is true and even interacted with plaintiffs in New Jersey pursuant to that contract.  But beyond that there is little more.  To allow personal jurisdiction based on these narrow and limited contacts would undermine the general rule that merely entering

22

into a contract with a forum defendant is insufficient to establish personal jurisdiction over such a defendant.

In short, defendants in this case did not deliberately engage in significant activities in New Jersey, or create a continuing obligation between them and plaintiff, or manifestly avail themselves of the privilege of conducting business in New Jersey.  See Burger King, 471 U.S. at 475.  Consequently, this Court cannot exercise personal jurisdiction over defendants to resolve plaintiff's claims against them.[11]

### CONCLUSION

Because the Court lacks personal jurisdiction over defendants, defendants' motion to dismiss plaintiff's claims for lack of personal jurisdiction will be granted, and plaintiff's motion for leave to file a third amended complaint will be denied as moot.  An appropriate Order will be entered.


Date:  October 14, 2016                s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

---

[11] As noted, *infra* note 9, plaintiff is not left without a forum in which to prosecute his claims against defendants.